**In re Leo (NMN) KAPLAN, Debtor.**

**Bankruptcy No. 88–04121–W–13.**

United States Bankruptcy Court,
W.D. Missouri.

Jan. 6, 1989.

Richard E. Rose, Kansas City, Mo., for debtor.

Jack N. Bohm, Daniel S. Rabin, Kansas City, Mo., for Bencharge Credit Service.

Kurt Weinrich, Kansas City, Mo., for World Savings.

Rick Fink, Chapter 13 Trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Bankruptcy Judge.

Debtor filed a petition for reorganization under Chapter 13. Bencharge objects to confirmation and also claims that its claim should be classified as secured rather than unsecured. World Savings seeks relief from the stay on debtor's residence.

Considering these issues in reverse order, the facts as regards World Savings' Motion require a negative ruling for movant. Generally speaking the Code provides for lift of the automatic stay: (1) because the property is not being cared for and/or the secured creditor's position is threatened by usage or abuse of the property (sometimes called for "cause"), and (2) because the debtor has no equity in the property and the collateral is not essential to an effective reorganization. World Savings did not present evidence under scenario (1) above. There was no indication that the property was not being cared for, or was uninsured, or was being misused—it just wasn't being paid for and that does not constitute "cause" under 11 U.S.C. § 362(d)(1). The second problem with the evidence proffered by World Savings is that it did not establish that the debtor had no equity in the property. This is the basic requirement before the stay can be lifted under 11 U.S.C. § 362(d)(2). Since movant could not demonstrate lack of equity and exhibited no "cause", the Motion To Lift Stay is DENIED.

Bencharge's allegations are somewhat more complex. Debtor purchased in March of 1988, a "Captivator Spa" hot tub for $7,430.43. (The Court is not quite sure what it is this expensive body soaker captures or captivates, which is probably a sign and function of the Court's advanced age.) Debtor financed this body soaker with Bencharge and had it delivered to debtor's house. However, it was never uncrated or installed but instead was almost contemporaneously resold to one Jamie Woolard for $1,500.00 cash. Debtor admitted at the § 341 Meeting (as per transcript introduced) buying the body soaker with the intent to sell it for quick cash and never install it. Of course, the Missouri Retail Installment Agreement was totally false in that debtor did not make a

$3,930.43 downstroke. Bencharge perfected a security interest in the body soaker in Missouri, but did not perfect in Kansas where Mr. Wollard resides. Bencharge presumably may pursue Pacific Trend Waterbeds, the seller of the Missouri Retail Installment Contract. Bencharge did sue debtor in July of 1988 after he missed payments and on September 23, 1988, debtor filed this proceeding.

■ Bencharge presents two issues, i.e., it claims that it is a secured creditor in this proceeding even though debtor disposed of the collateral, and also objects to confirmation on the ground that the Chapter 13 was not filed in good faith. In its post trial brief, Bencharge seems to have abandoned its contention that it should be a secured creditor. The Court believes that to be wise. Before a party can be a secured creditor, its security interest in the collateral must not only be properly perfected, but the collateral itself must be of value and in the possession of the debtor (or some entity near and dear thereto.) The automatic stay of this proceeding does not affect the relationship (or any litigation) between Bencharge and Mr. Wollard because the body soaker was not property of the estate and debtor claimed no interest therein. Perhaps a rule of thumb might be that if the collateral is not property of the estate, the creditor who claims a security interest therein is not a secured creditor.

■ Moving on to the issue of good faith, Bencharge failed to convince the Court that the abuse of Bencharge by debtor precludes debtor from filing Chapter 13. Without a doubt, debtor's actions were reprehensible and well may have crossed the line of criminally prohibited conduct, but that was in March and April of 1988, and the question posed concerns the time frame of September 22, 1988, i.e., the filing date. If debtor's heart was pure as he approached the office of the Clerk of the Bankruptcy Court, that is all that counted. For the leading case for such a proposition consult *In re Chaffin*, 816 F.2d 1070 (5th Cir.1987), wherein the Fifth Circuit established that while the wages of sin might be slim, they were not death. *Id.* at 1073–74.

Therefore, the issue of debtor's earlier misconduct and Bencharge's loss does not provide an ironclad defense to a Chapter 13 confirmation, and this issue is ruled against Bencharge.

■ Finally, the Court is forced to rule against debtor on the issue of confirmation. 11 U.S.C. § 1322(a)(1) requires that the plan provide for the submission of all or such portion of ... future income of the debtor ... as is necessary for the execution of the plan. Debtor's plan does not do this. Debtor has filed what might be called a "contingent—liquidating plan". Debtor's payments are not level over the life of the plan, and in effect simply hold off World Savings from any action for six months while debtor tries to sell the house he has been trying to sell for over a year. This hardly demonstrates good faith in that it does not conform to the code requirements. Debtor will have twenty (20) days to amend his plan if he so chooses. If not, the Court will dismiss or convert under 11 U.S.C. § 1307 upon motion of a party in interest.

SO ORDERED.